## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JOHANNES GERBER,**

     **Plaintiff,**

**v.**

**RANDALL BLAU and**
**BUCKFIRE AND BUCKFIRE, P.C.,**

     **Defendants.**

                              /

**Case No. 20-12118**

**Hon. Denise Page Hood[1]**

## ORDER DENYING MOTION TO DISMISS OR CHANGE VENUE (#10)

## I.     INTRODUCTION

On August 6, 2020, this legal malpractice claim was filed by Plaintiff Johannes Gerber against Defendants Randall Blau and Buckfire and Buckfire, P.C. (ECF No. 1) The First Amended Complaint was filed on August 8, 2020 alleging one count of Professional Negligence/Legal Malpractice (Count I).  (ECF No. 8)

Gerber is a citizen and resident of Germany.  *Id*. at PageID.163.  Blau is an attorney and employed by the law firm of Buckfire and Buckfire located in Michigan.  *Id*.  On August 5, 2016, Gerber was injured while riding a motorcycle

---

[1] On February 16, 2022, this action was randomly reassigned to District Judge Denise Page Hood from the late Senior District Judge Arthur J. Tarnow's docket.

on Highway 89 in Custer County, South Dakota.  *Id*. at PageID.164.  He received emergency medical treatment at Custer Regional Hospital, in Custer, South Dakota and treated by Joy Falkenburg, M.D., among others.  *Id*.

Dr. Falkenburg was Board Certified by the American Board of Medical Specialties in Family Medicine, but was practicing in the emergency department at Custer Regional Hospital.  *Id*., PageID.165.  Dr. Falkenburg provided to Gerber inadequate, substandard medical treatment that resulted in additional injuries and now at least nine surgeries, none of which would have been necessary but for Dr. Falkenburg's medical malpractice.  Dr. Falkenburg discharged Gerber from Custer Regional Hospital with signs and symptoms of compartment syndrome, but without providing adequate diagnosis and treatment for that condition.  Gerber was discharged by Dr. Falkenburg with signs and symptoms of compartment syndrome, without providing adequate diagnosis and treatment for that condition.  *Id*.  An August 5, 2016 x-ray taken at the hospital revealed multiple acute rib fractures involving the left third and fourth ribs posteriorly, left seventh rib laterally, with no definite pneumothorax nor hemothorax identified.  *Id*. at PageID.167.  Gerber was discharged on August 6, 2016, with the following diagnoses: 1) Tibial plateau fracture, uncontrolled pain; 2) scapular fracture; 3) multiple abrasions to motorcycle accident; and, 4) Pain better controlled.  *Id*.

Gerber asserts that Dr. Falkenburg knew that upon discharge, Gerber was planning on promptly traveling by plane back to Germany where he lived.  *Id.*, PageID.168.   Gerber further asserts that traveling at high altitudes for long distances significantly increases the risk of the development and/or worsening of compartment syndrome in people like Gerber, who had suffered multiple fractures, including of his left lower leg.   *Id.*, PageID.169.   Gerber alleges that Dr. Falkenburg failed to advise him that by traveling back to Germany so soon after his injury that he was at significantly increased risk of developing compartment syndrome, and that because that condition is a medical emergency, there would be little, if anything, that anyone on board could do to treat the condition, and certainly they would not be able to provide definitive treatment, including a fasciotomy. *Id*.

Gerber claims that as a direct and proximate result of Dr. Falkenburg's substandard medical treatment at Custer Regional Hospital, he developed compartment syndrome which then went undiagnosed and untreated until he finally got back to Germany.   By then, Gerber's symptoms had significantly worsened, resulting in the need for extensive additional treatment, including but not limited to at least nine surgeries he would not have otherwise needed, resulting in serious, permanent limitations and deficits and very substantial economic harm,

including lost income and medical bills.  *Id.*, PageID.170.

B. Herwald, M.D., Gerber's treating surgeon in Germany, wrote on August 25, 2016, that,

> Immediately after being admitted to the inpatient unit, the injured patient received initial surgical treatment for clinically diagnosed compartment syndrome of the left lower leg through fasciotomy of all compartments.
>
> Since then, removal of the tibialis anterior and lateral compartment of the leg was necessary in the course of multiple subsequent operations due to advanced muscle necrosis. Additional surgical revisions will be necessary on the left lower leg until definitive wound closure.
>
> The duration of the inpatient stay is currently still not foreseeable. In light of the lateral tibial plateau fracture as well as the compartment syndrome of the left lower leg, considerable post-traumatic long-term damage of the left leg will remain.

*Id.*, PageID.171.   Gerber thereafter consulted with and hired Dr. Dirk Ciper, a German medical malpractice attorney, who communicated with contacts in the United States, and was eventually put in touch with Blau.  *Id.*  Blau and the firm, were hired to pursue a medical malpractice case against Custer Regional Hospital and its treaters.  *Id.*  Although Blau and other attorneys with the firm were not licensed to practice in South Dakota, Blau and the firm agreed to represent Gerber with the medical malpractice claim arising in South Dakota.  *Id.*, PageID.172.  In a January 24, 2018 email, Blau stated that "[w]e will provide a demand letter to the

hospital and see what happens.  Most of these cases require litigation.  If we need to litigate, we will need additional medical experts' opinions regarding how the alleged negligence caused his problems and current condition.  We will keep you posted." *Id*. On July 18, 2018, Blau wrote,

> To clarify, Anne [Lawter] did obtain an ER expert to support our claim. We will also need a "causation" expert to support that the alleged negligence caused the claimed injuries. This should not be difficult but is necessary. I have been in contact with a local attorney in South Dakota and am waiting to hear about the procedural requirements for filing the case. If we need affidavits, I will obtain them and have them filed with the Complaint. This will be the beginning of the litigation process.

*Id.*, PageID.173.  Gerber claims that Blau thereafter appears to have lost track of Gerber's medical malpractice claim and no medical malpractice lawsuit was filed on behalf of Gerber.  *Id.*, PageID.173-.174.

Gerber asserts that South Dakota law provides a two-year statute of limitations on medical malpractice claims.  *Id.*, PageID.173.  Gerber's medical malpractice claim under South Dakota law expired on August 6, 2018.  *Id*.  Neither Blau nor anyone else at the firm advised Dr. Ciper or Gerber that the statute of limitations had expired.  *Id.,* PageID.174. The statute of limitations on Gerber's medical malpractice claim expired on Blau and the firm's watch.  *Id*.   On September 25, 2018, after the statute of limitations had expired unbeknownst to Gerber and Dr. Ciper, Blau wrote to Dr. Ciper,

> Dirk, I am sorry for the delayed response. Things have been very hectic here the last few weeks. Again I apologize. I will be meeting with the emergency medicine physician in the upcoming weeks to formalize his opinions in preparation for the litigation. In addition, I am scheduled to speak with our potential causation expert on October 15, 2018, to go over his opinions as well. I will reach back out to you after these two things take place.
>
> Please let the client know that we are on this and moving forward. As I have explained before, the litigation process here takes much longer than other places. It is very frustrating for everyone, and I completely understand. If you have any questions or concerns at this time, please let me know. Thank you again.

*Id*., PageID.174-175.   Blau became increasingly difficult to communicate with over the ensuing months, as Dr. Ciper begged him several times for updates on the case.   When Blau did communicate, he blamed his lack of progress on his alleged inability to find a South Dakota medical malpractice lawyer to take the case.   *Id*., PageID.175.  In a December 3, 2018 email, Blau wrote,

> Dirk, I sincerely apologize for the delay.  I have been working with and waiting to hear from the 'local counsel' in South Dakota.  We do have the experts on board to bring the claim.  However, there has been a reluctance to assist us as several South Dakota attorneys have informed that almost no one is bringing malpractice cases in Sought [sic] Dakota due to the venue and the insurance companies taking every case to trial.  Please recall, you/Anne had to threaten the hospital just to obtain the medical records.

*Id*., PageID.184.

Long after the South Dakota statute of limitations had been missed by Blau and the firm, Gerber and Dr. Ciper realized what had happened.   Gerber's valid

6

and valuable medical malpractice claim was lost.  *Id*., PageID.176.  Gerber believes that Blau's claimed excuse of not being able to find a South Dakota medical malpractice lawyer was subterfuge, and was made up in hopes that Dr. Ciper and Gerber would give up and not further pursue the medical malpractice claim so they would never perceive that he had "blown" the statute of limitations. *Id.*, PageID.175-.176.  Gerber questions that if Blau believed that a South Dakota medical malpractice lawyer was needed to pursue the case, why had Blau not begun looking for one when he was first hired and, why was a medical malpractice specialist in South Dakota required when the firm supposedly had that expertise, and why did Blau accept the case in the first place, when he knew from the very beginning that it would involve bringing the lawsuit in South Dakota?  *Id.*, PageID.175.

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's First Amendment Complaint.  A response and reply have been filed.

## II.   ANALYSIS

### A.   Standard of Review

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605,

608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). Generally, at this stage of the proceedings, a court must determine whether the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679; *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc*. (Bledsoe II), 501 F.3d 493, 505 (6th Cir. 2007) (applying same standard to a False Claims Act qui tam action). Under Federal Rule of Civil Procedure 8, a pleading satisfies this standard if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ P. 8(a)(2).

Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  The court may transfer the matter when "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties." *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994). In analyzing the second and third criteria, courts consider the following factors:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000) (quoting *Pilates, Inc. v. Pilates Institute, Inc.*, 891 F.Supp. 175, 183 (S.D.N.Y. 1995)); *Intrastate Distributors Inc. v. Alani Nutrition, LLC*, No. 2:21-CV-10369, 2021 WL 5540849, at *9–10 (E.D. Mich. May 28, 2021), report and recommendation adopted, No. 21-10369, 2021 WL 6125901 (E.D. Mich. Dec. 28, 2021).  The defendant bears the burden to show that a venue transfer is appropriate, but "mere assertions or speculation, without evidence, are insufficient to meet this burden."

*IFL Grp. Inc. v. World Wide Flight Serv., Inc.*, 306 F. Supp. 2d 709, 714 (E.D. Mich. 2004). The burden is a heavy one, and requires the moving party to show that the balance of factors weighs strongly in favor of transfer. *Steelcase, Inc. v. Smart Techs, Inc.*, 336 F. Supp. 2d 714, 719 (W.D. Mich. 2004). The plaintiff's choice of forum deserves "foremost consideration," and should not be disturbed unless the balance of factors strongly favors the defendant. *W. Am. Ins. Co. v. Potts*, 908 F.2d 974 (6th Cir. 1990) (citing *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951)).

### B.     Legal Malpractice Claim

Defendants move to dismiss Gerber's claim for legal malpractice for failure to state a claim upon which relief may be granted, stating two reasons: 1) an attorney's decision to retain a medical expert to opine on the underlying theory of causation before filing a malpractice lawsuit does not amount to legal malpractice under Michigan law; and, 2) Plaintiff's Amended Complaint still lacks factual matter that could plausibly establish Defendants as the proximate cause of his alleged injuries.  (ECF No. 10, PageID.250) In response, Gerber argues that the attorney judgment rule does not bar his legal malpractice claim and that the First Amended Complaint alleges a clear theory of causation.

Under Michigan law, a plaintiff must satisfy the following four elements to

prevail on a legal malpractice claim: "(1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was a proximate cause of an injury; and (4) the fact and extent of the injury alleged." *McKenzie v. Berggren*, 99 F. App'x 616, 619 (6th Cir.2004) (quoting *Coleman v. Gurwin*, 443 Mich. 59, 63 (Mich.1993)). To establish causation, a legal malpractice plaintiff must show that, but for the attorney's alleged malpractice, he would have been successful in the underlying suit. *Charles Reinhart Co. v. Winiemko*, 444 Mich. 579, 586 (1994). "In other words, the client seeking recovery from his attorney is faced with the difficult task of proving two cases within a single proceeding." *Id*. A plaintiff "must prove professional negligence, i.e., that counsel failed to exercise reasonable skill, care, discretion, and judgment in the conduct and management of the underlying case." *Radtke v. Miller, Canfield, Paddock & Stone*, 453 Mich. 413, 424 (1996). "The plaintiff must also establish that, but for the negligence, the outcome of the case would have been favorable to the plaintiff." *Coleman*, 443 Mich. at 63. When "an attorney acts in good faith and in honest belief that his acts and omissions are well founded in law and are in the best interest of his client, he is not answerable for mere errors in judgment." *Simko v. Blake*, 448 Mich. 648, 658 (1995); *see also Woods v. Gursten*, No. 194523, 1998 WL 1988581, at * 3 (Mich. App. Dec.15, 1998)

(holding that "legitimate areas of attorney judgment ... may not be second-guessed"); *McKenzie*, 99 F. App'x at *621.  This is sometimes referred to as the "attorney judgment rule." *See People v. Trakhtenberg*, 493 Mich. 38, 44-45 (2012).

As to the first element of a legal malpractice claim, the existence of an attorney-client relationship, Defendants do not dispute that they were hired by Gerber to pursue a medical malpractice claim.  The emails cited in the First Amended Complaint from Blau shows that there existed such a relationship. Regarding the second element, negligence in the legal representation of the plaintiff, Blau alleged that Defendants failed to timely protect Gerber's right and ability to pursue a timely medical malpractice lawsuit in South Dakota and that the statute of limitations expired while Defendants represented Gerber and did not tell him that such had expired.  ECF No. 8, PageID.186-.187.  The third element, that the negligence was a proximate cause of an injury, Gerber alleges that he was injured and damaged when he lost the opportunity to bring a medical malpractice claim against the hospital and the medical treaters.  *Id.*, PageID.187-.188.  The fourth element, the fact and extent of the injury alleged, Gerber alleges that he lost the economic recovery he would have obtained had the medical malpractice lawsuit was timely filed which included both economic and non-economic damages under South Dakota law.  *Id*.

The plaintiff in a legal malpractice claim must also establish that, but for the negligence, the outcome of the case would have been favorable to the plaintiff. Gerber alleges in detail the duties the treating doctor in South Dakota, Dr. Falkenburg, breached in paragraph 72:

> a. Discharging Mr. Gerber without ruling out the possibility of compartment syndrome;
> b. Discharging Mr. Gerber despite the fact that he had pain uncontrolled by anything other than powerful pain medications, including Meloxicam (a nonsteroidal anti-inflammatory drug used to reduce pain, swelling, and stiffness of the joints), cyclobenzaprine (a muscle relaxant that blocks nerve impulses or pain sensations), Norco (a powerful narcotic pain medication), and Dilaudid (a powerful narcotic pain medication);
> c. Failing to perform a fasciotomy on Mr. Gerber during the August 5-6, 2016 hospitalization;
> d. Failing to keep Mr. Gerber hospitalized for at least another 48 hours so that she and other hospital staff could monitor him for signs and symptoms of compartment syndrome, to ensure that he was fit to fly back to Germany without making his condition worse;
> e. Failing to recommend to Mr. Gerber that he not fly anywhere in close proximity to his discharge, so that he would have time to monitor his condition for post-injury swelling to subside so that he could, at the end of that waiting period, safely fly back to Germany after being evaluated again by medical personnel; and
> f. Failing to advise Mr. Gerber during the August 5-6, 2016 hospitalization that if he flew back to Germany in close proximity to his discharge from the hospital, that he would be at an increased risk of the development of compartment syndrome, which in the context of a long flight at such high altitudes, would be a medical emergency with a potentially disastrous outcome for his leg, as he would not be able to receive any significant medical assistance until he arrived back in Germany, many hours later; ...

*Id.*, PageID.178-179.  Gerber further detailed what the medical literature indicates

13

as to the severity of acute compartment syndrome of the lower leg, the effect of a delay precisely diagnosing such and how a long flight to Germany would severely worsen the condition. *Id.*, PageID.180-181. Based on these detailed allegations in the First Amended Complaint, Gerber has sufficiently stated a claim that but for the negligence of the treating physician, the outcome of the case would have been favorable to Gerber. Blau's own statements in his email supports a plausible medical practice claim in that he indicated, "[w]e do have the experts on board to bring the claim." *Id.*, PageID.184.

Regarding the attorney judgment affirmative defense, Defendants assert that seeking medical experts to opine on the underlying theory of causation before filing a malpractice lawsuit does not amount to legal malpractice under Michigan law. That may well be the law in Michigan. However, the allegation in the First Amended Complaint is that Blau failed to timely file the medical malpractice claim within the statute of limitations and that Blau did not advise Gerber that there was a danger that the statute of limitations was about to run or that it had run. Blau's emails on January 24, July 18, September 24 and December 3, 2018 cited above as alleged in the First Amended Complaint, do not mention any issues with the statute of limitations. At this pleading stage, the attorney judgment rule cannot be applied since Gerber has plausibly pled that Defendants failed to timely file a medical

malpractice claim before the statute of limitations had run.  The allegation in the First Amended Complaint is that Blau did not advise Gerber as to whether the statute of limitations was at issue nor the impact of failing to file a medical malpractice claim within the statute of limitations.  If discovery shows that Blau advised Gerber as to the statute of limitations issue and the impact on Gerber's medical malpractice claim, then at the summary judgment phase, Blau may raise the attorney judgment rule affirmative defense.

Based on the above, Gerber has plausibly stated a claim of legal malpractice against Defendants and that but for the underlying negligence of the treating physician, the outcome of Gerber's medical malpractice claim would have been in Gerber's favor.  The attorney judgment rule will not be applied at the pleading stage, but may be raised after discovery has been completed and at the summary judgment stage.  Defendants' Motion to Dismiss is denied.

### C.    Motion to Transfer Venue to South Dakota

Defendants seek to move the venue in this legal malpractice action to South Dakota for the convenience of the parties and witnesses.  Gerber responds that the actions taken by Defendants as to the legal malpractice claim occurred in Michigan.

Defendants assert that the witnesses, including the hospital staff, the record

custodian, the first responders, the motorcycle rental company and eyewitnesses to the accident all reside in South Dakota.  Gerber asserts that the actions arising out of the legal malpractice claim occurred in Michigan.  Blau and the employees of the firm reside in Michigan.  Gerber further asserts that the medical records could easily be obtained and brought to Michigan.  As to the medical treaters, their contact with Gerber lasted fewer than 24 hours, and said treaters could be deposed in South Dakota.  Because the witnesses to the legal malpractice claim reside in Michigan, and Gerber agrees the medical witnesses could be deposed in South Dakota, the convenience of witnesses favors Michigan.

The location of relevant documents and relative ease of access to sources of the medical records also do not appear to be at issue.  The documents related to Blau and the firm's representation of Gerber are located in Michigan.  This factor weighs in favor of Michigan.

As to the convenience of the parties, Gerber, a German resident, brought the suit in Michigan, where Defendants reside.  Transferring venue to South Dakota would inconvenient both parties.  This factor weighs in favor of Michigan in that Defendants reside in this Michigan and Gerber chose Michigan as the venue.

The locus of the operative facts–Blau's actions in representing Gerber, occurred in Michigan.  This factor weighs in favor of Michigan.

Because Gerber agrees to depose the witnesses in South Dakota, there appears to be no issue in obtaining their depositions.  As to perhaps attendance at trial if held in Michigan, there may be an issue of the medical witnesses attending trial from South Dakota.  This factor may weigh in favor of South Dakota.

The forum governing the legal malpractice law favors Michigan in that the actions taken by Blau occurred in Michigan.  South Dakota may not be as familiar with the governing medical malpractice law of Michigan.  This factor weighs in favor of Michigan.

The weight accorded the Gerber's choice of forum in Michigan is strong in that the acts by Blau occurred in Michigan.

The main issue in this case is Defendants' acts as they relate to the legal malpractice claim.   Although Gerber must support the underlying medical malpractice claim as well, Gerber, a resident of Germany, is willing to travel to Michigan for trial.  He would also have to travel to South Dakota as well.  Because the witnesses relating to the legal malpractice claim reside in Michigan, and it appears that deposition testimonies could be taken for purposes of trial, the trial efficiency factor, and the interests of justice, based on the totality of the circumstances, favors Michigan. Gerber's choice of forum is Michigan and it deserves "foremost consideration."  The Court will not disturb Gerber's choice of

forum since balancing the factors noted above does not strongly weigh in favor of Defendants, who reside in Michigan.  Defendants' Motion to Transfer Venue is denied.

## III.   CONCLUSION/ORDER

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion to Dismiss Plaintiffs First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) or, in the Alternative, Transfer Venue to the United States District Court of South Dakota, pursuant to 28 U.S.C. § 1404(a) **(ECF No. 10)** is DENIED.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED:  March 18, 2025